Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DREW SCHULTHESS,<br><br>                         Plaintiff,<br><br>          vs.<br><br>MAGNACHIP SEMICONDUCTOR CORPORATION, YOUNG-JOON KIM, MELVIN KEATING, ILBOK LEE, CAMILLO MARTINO, GARY TANNER, NADER TAVAKOLI, and LIZ CHUNG.<br><br>                         Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Drew Schulthess ("Plaintiff"), by and through his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against MagnaChip Semiconductor Corporation ("MagnaChip" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), and collectively with MagnaChip, the "Defendants"), for violations of Sections 14(a)

- 1 -

COMPLAINT

and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to South Dearborn Limited ("Parent"), and Michigan Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Wise Road") as a result of an unfair process for an unfair price and to enjoin an upcoming stockholder vote on a proposed all cash transaction acquiring all of the Company's remaining outstanding shares, valued at approximately $1.4 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 26, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by Wise Road Capital, will acquire all of the remaining outstanding shares of MagnaChip's common stock at a price of $29.00 per share in cash. As a result, MagnaChip will become an indirect wholly-owned subsidiary of Wise Road.

3.      Thereafter, on April 19, 2021, MagnaChip filed a Preliminary Preliminary Proxy on Schedule PREM14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient process in which the Board inefficiently conducted the sales process of the Company, including selling of a portion of the Company prior to entering into negotiations for a sale of the rest of the Company, and not creating a disinterested committee of directors to run the sales process until it had already been going on for several months.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell MagnaChip without first taking steps to ensure that Plaintiff as a public stockholder of MagnaChip would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Wise Road without regard for MagnaChip's

public stockholders, including Plaintiff.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

6.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff or the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on April 19, 2021 with the SEC in an effort to solicit stockholders including Plaintiff to vote their MagnaChip shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient, deprives Plaintiff of the information needed to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties. As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for MagnaChip, provided by MagnaChip to the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by J.P. Morgan and provides to the Company and the Board

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event

COMPLAINT

the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

9.      Plaintiff is a citizen of New Hampshire and, at all times relevant hereto, has been a MagnaChip stockholder.

10.      Defendant MagnaChip together with its subsidiaries, designs, manufactures, and sells analog and mixed-signal semiconductor platform solutions for communications, Internet of Things, consumer, industrial, and automotive applications.  MagnaChip is incorporated in Delaware and has its principal place of business at 1, Allée Scheffer, L-2520, Luxembourg, Grand Duchy of Luxembourg.  Shares of MagnaChip common stock are traded on the NYSE under the symbol "MX."

11.      Defendant Young-Joon Kim ("Kim") has been a Director of the Company at all relevant times.  In addition, Kim serves as the Company's Chief Executive Officer ("CEO").

12.      Defendant Melvin Keating ("Keating") has been a director of the Company at all relevant times.

13.      Defendant Ilbok Lee ("Lee") has been a director of the Company at all relevant times.

14.      Defendant Camillo Martino ("Martino") has been a director of the Company at all relevant times.  In addition, Martino serves as the Non-Executive Chairman of the Company Board.

15.      Defendant Gary Tanner ("Tanner") has been a director of the Company at all relevant times.

16.      Defendant Nader Tavakoli ("Tavakoli") has been a director of the Company at all relevant times.

17.     Defendant Liz Chung ("Chung") has been a director of the Company at all relevant times.

18.     The defendants identified in paragraphs 11 through 17 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

19.     Non-Defendant Wise Road is a global private equity firm that invests in leading technology companies. Wise Road is an exempted company incorporated in the Cayman Islands with limited liability.

20.     Non-Defendant Merger Sub is a wholly owned subsidiary of Wise Road created to effect the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

24.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with MagnaChip and Plaintiff as a MagnaChip stockholder and owe the Company and Plaintiff the duties of due care, loyalty, and good faith.

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with MagnaChip and owe the Company and Plaintiff in his capacity as a Company stockholder the duties of due care, loyalty, and good faith.

26.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company and public stockholders of the Company such as Plaintiff.  To diligently comply with these duties, directors of a corporation must:

       a.     act with the requisite diligence and due care that is reasonable under the circumstances;

       b.     act in the best interest of the company and its stockholders such as Plaintiff;

       c.     use reasonable means to obtain material information relating to a given action or decision;

       d.     refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

       e.     avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

27.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of MagnaChip, are obligated to refrain from:

        a.      participating in any transaction where the directors' or officers' loyalties are divided;

        b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or;

        c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

28.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to MagnaChip and Plaintiff in his capacity as a public stockholder of MagnaChip, including their duties of loyalty, good faith, and due care.

29.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for their MagnaChip common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

30.     MagnaChip, is a designer and manufacturer of analog and mixed-signal semiconductor platform solutions for communications, IoT, consumer, industrial and automotive applications. The Company provides a broad range of standard products to customers worldwide. MagnaChip, with more than 40 years of operating history, owns a portfolio of approximately 1,200 registered patents and pending applications, and has extensive engineering, design and manufacturing process expertise.

COMPLAINT

31.     The Company offers display solutions, including source and gate drivers, and timing controllers that cover a range of flat panel displays used in mobile communications, automotives, entertainment devices, notebook PCs, monitors and liquid crystal displays, organic light emitting diodes, and micro light emitting diode (LED) televisions. The Company also provides metal oxide semiconductor field effect transistors, insulated-gate bipolar transistors, AC-DC converters, DC-DC converters, LED drivers, switching regulators, linear regulators, and power management integrated circuits for a range of devices comprising televisions, smartphones, mobile phones, wearable devices, desktop PCs, notebooks, tablet PCs, and other consumer electronics, as well as for various industrial applications consisting of power suppliers, e-bike, photovoltaic inverter, LED lighting, motor drive, and home appliances. It serves consumer, computing, and industrial electronics original equipment manufacturers; original design manufacturers; and electronics manufacturing services companies, as well as subsystem designers. The Company sells its products through a direct sales force, as well as through a network of agents and distributors worldwide. MagnaChip was incorporated in 2004 and is based in Luxembourg City.

32.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results.  For example, in the February 17, 2021 Press Release announcing its 2020 Q4 and full year 2020 operational and financial results, the Company highlighted fourth quarter revenues of $142.9 million, up 14.5% from the previous quarter and up 15.9% from a year ago, and as well as full year Earnings per Share of $7.54.

33.     Defendant CEO Kim commented on the results in the Press Release, "'Magnachip's Q4 results exceeded our expectations, capping off one of the most challenging years for any of us. Our Q4 results demonstrated counter-seasonal strength with a 14.5% sequential revenue growth and GAAP operating income margin of 6.4%, and Non-GAAP adjusted operating income margin of 10.7% driven

by a strong ramp-up in 5G as well as effective cost management. 2020 was an exceptional year for Magnachip, despite the challenges presented by the pandemic. We entered MX 3.0, the exciting new chapter of growth, with a sharpened focus as a pure-play standard products company, renewed energy, and a clear mission of empowering our customers. Under MX 3.0, we set long-term financial targets that we would like to achieve by 2023. While we recognize the path will not always be a straight line, the exciting opportunities ahead of us only reinforce our confidence in our growth outlook. I am proud of and thankful for our amazing group of dedicated employees who continued to deliver extraordinary results in 2020.'"

34.    Despite this successful year and positive outlook, the Individual Defendants have caused MagnaChip to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

35.    As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

36.    Notably, as indicated in the Preliminary Proxy, the sales process began as early as February 2019, when the Company sought to sell its Foundry Sales Process division.  Notably despite later selling the remainder of the Company, the MagnaChip Board allowed the Company to be sold off piecemeal.

37.    In addition, while the Preliminary Proxy does indicate that an "Ad Hoc Transaction Committee" was created to run the sales process, it notes that such a committee was not created until well into the sales process.  In fact, the Ad Hoc Transaction Committee was not created until after the

COMPLAINT

Company had entered into exclusivity discussions with one potentially interested third party, and that exclusivity period had expired.

38.     Such a clear mismanagement of the sales process indicates a high likelihood of corporate waste during this time as well as a lower eventual merger consideration.  Despite this the Preliminary Proxy fails to indicate specific reasoning as to why the sales process could not be done in a more efficient manner.

39.     The Preliminary Proxy also fails to indicate what specific powers the Ad Hoc Transaction Committee had in relation to approval of any potential agreement, nor does it adequately indicate if the committee had full control over the sales process after its creation. In fact, the only description given of the Ad Hoc Transaction Committee's role was to ensure "efficient coordination" between the Company and its advisors. Such a description is entirely lacking.

40.     In addition, the Preliminary Proxy is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Wise Road, whether these agreements differ from each other, and if so in what way, including failing to disclosure of the similarities and/or dissimilarities of any specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Wise Road, would fall away.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

42.     On March 26, 2021, MagnaChip issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**SEOUL, South Korea, March 26, 2021** — Magnachip Semiconductor Corporation ("Magnachip" or the "Company") (NYSE: MX), the South Korean leader in display and power solutions, today announced that it has entered into a definitive agreement (the "Agreement") with South Dearborn Limited, a company incorporated in the Cayman Islands, and Michigan Merger Sub, Inc., a Delaware corporation, which are investment vehicles established by Wise Road Capital LTD and certain of its limited partners ("Wise Road").

Under the terms of the Agreement, Magnachip shareholders will receive $29.00 in cash for each share of Magnachip's common stock they currently hold, representing a premium of approximately 75% to Magnachip's 3-month volume-weighted average share price and approximately a 54% premium to the unaffected closing stock price on March 2, 2021, the last trading day before media reports of third-party interest in acquiring Magnachip. The all-cash transaction has an equity value of approximately $1.4 billion. The transaction is fully backed by equity commitments and not contingent on any financing conditions.

Following the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles, and the Company will remain based in Cheongju, Seoul and Gumi, South Korea. The transaction is expected to be seamless for customers and employees across Magnachip's businesses.

Magnachip's Chief Executive Officer, YJ Kim, said: "This transaction is in the best interests of all of our stakeholders, including shareholders, customers and employees. It will provide an excellent opportunity to accelerate our MX 3.0 growth strategy. Given their deep industry expertise, Wise Road Capital is an ideal partner for Magnachip, and we look forward to working with them as we chart the next phase for our company. We remain grateful to our customers for their trust and to our fellow employees for their unwavering commitment to delivering industry-leading products to customers worldwide."

Wise Road intends to work together with Magnachip's management team to pursue the next step in the Company's growth strategy and transform the Company into a true industry leader in the global display and power markets. Through its additional investment and global network, Wise Road will help Magnachip's growth internationally. Wise Road remains absolutely committed to providing world-class products and services to the Company's customers, while creating a stable environment for the company's employees to grow and thrive.

The Board of Directors of Magnachip has unanimously approved the Agreement and recommends that Magnachip shareholders vote in favor of the transaction. Details of the transaction and the Agreement are included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

***The Inadequate Merger Consideration***

43.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

44.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration how the Company is performing and its promise.

45.    After releasing its Q4 and Full Year 2020 earnings, *Nasdaq* released its write up on the Company's positive results and its significance, "Magnachip (MX) came out with quarterly earnings of $0.40 per share, beating the Zacks Consensus Estimate of $0.20 per share. This compares to earnings of $0.32 per share a year ago. These figures are adjusted for non-recurring items. This quarterly report represents an earnings surprise of 100%. A quarter ago, it was expected that this chip products maker would post earnings of $0.06 per share when it actually produced earnings of $0.14, delivering a surprise of 133.33%... Magnachip shares have added about 44.2% since the beginning of the year versus the S&P 500's gain of 4.8%... It will be interesting to see how estimates for the coming quarters and current fiscal year change in the days ahead. The current consensus EPS estimate is $0.13 on $123.25 million in revenues for the coming quarter and $0.75 on $528.95 million in revenues for the current fiscal year."

46.    On February 18, 2021, the Company issued a press release announcing a new production expanding its product offerings, "Magnachip Semiconductor Corporation ("Magnachip") (NYSE: MX) announced today that the Company has commenced full-scale mass production of its

COMPLAINT

first 120Hz High Frame Rate (HFR) OLED display driver IC (DDIC) for QHD flexible displays, followed by the successful release and initial production… The global 5G smartphone market is growing rapidly with the ongoing release of new 5G smartphones from the leading smartphone manufacturers. According to Omdia, a market research firm, global 5G smartphone shipments reached 220 million units in 2020 and would grow five-fold to 1,150 million units by 2023, which will account for almost 80% of all smartphone shipments that year. 'We have further strengthened our customers' trust in and recognition of our technology and product quality with the mass production of this new DDIC,' said YJ Kim, CEO of Magnachip. "We will continuously build the foundation for the future design requirements and expand new opportunities for foldable and 5G smartphones.'"

47.     On March 30, 2021, *The Burn-In* released an article of the deal, stating how the deal will benefit Magnachip, "Magnachip revealed it would sell off its foundry services division as part of an organization-wide streamlining initiative. The effort proved successful as it enabled the company to grow its business and improve its liquidity. Its sales to Wise Road seems like a logical next step in its evolution. The chipmaker specialized in fabricating automotive power management ICs and OLED display drivers using 200mm wafers. In recent years, the firm struggled with diminishing demand for its products amid competition from providers with more advanced nodes. But its manufacturing technology has become highly sought after again following a market shift in late 2020. Following the outbreak of COVID-19, personal transport sales plummeted worldwide. But after the world began adjusting to the pandemic's impact, interest in car ownership rebounded sharply. In fact, the demand for new vehicles contributed to a global shortage of electronic parts. As a result, interest in 8-inch wafers has become so strong, secondhand 200mm equipment has become a hot commodity. Provided the transaction goes through, Magnachip has the potential to significantly improve its earnings amid

COMPLAINT

worldwide semiconductor scarcity. The firm will be in a better position to realize its market opportunities with Wise Road's financial support and guidance."

48.    Clearly, while the deal will be beneficial to Wise Road it comes at great expense to Plaintiff and other public stockholders of the Company,

49.    Moreover, post-closure, Plaintiff will be frozen out of any future benefit from his investment in Magnachip's bright future.

50.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for the Wise Road at the expense of Plaintiff as a public stockholder, which clearly indicates that Plaintiff and other stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

51.    The Merger Agreement contains certain provisions that unduly benefit the Wise Road by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably, in the event of termination, the merger agreement requires MagnaChip to pay up to $42.1 million to the Wise Road and/or its affiliates, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, MagnaChip must pay this termination payment even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

52.    The Merger Agreement also contains a "No Solicitation" provision that restricts MagnaChip from considering alternative acquisition proposals by, *inter alia*, constraining

- 14 -

COMPLAINT

MagnaChip's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Takeover Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

53.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Wise Road and/or its affiliates information in order to match any other offer, thus providing the Wise Road access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Wise Road.

54.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company, Plaintiff and its public stockholders.

55.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

56.     The breakdown of the benefits of the deal indicate that MagnaChip insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of MagnaChip.

- 15 -
COMPLAINT

57.     Notably, while the Preliminary Proxy provides the below information regarding the amount of Company shares held by Company insiders, it fails to include an accounting of the dollar valuation of such shares.

| Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership[1] | Percent of Class[1] |
|---|---|---|
| **Principal Stockholders** | | |
| Oaktree Value Opportunities Fund Holdings, L.P.[2] | 3,214,537 | 6.9% |
| Brigade Capital Management, LP[3] | 3,028,318 | 6.2% |
| Federated Hermes, Inc.[4] | 2,959,604 | 6.4% |
| Rubric Capital Management LP[5] | 2,612,588 | 5.6% |
| Morgan Stanley[6] | 2,587,317 | 5.6% |
| **Directors and Named Executive Officers** | | |
| Kyo-Hwa (Liz) Chung | — | * |
| Melvin Keating[7] | 110,645 | * |
| Ilbok Lee[8] | 282,421 | * |
| Camillo Martino[9] | 128,545 | * |
| Gary Tanner[10] | 157,329 | * |
| Nader Tavakoli[11] | 352,981 | * |
| Young-Joon Kim[12] | 582,543 | 1.3% |
| Young Soo Woo[13] | 6,000 | * |
| Theodore Kim[14] | 228,875 | * |
| Woung Moo Lee[15] | 206,556 | * |
| Chan Ho Park[16] | 5,000 | * |
| Jonathan Kim[17] | — | * |
| Tae Jong Lee[18] | 7,140 | * |
| Directors and current Executive Officers as a group (11 persons)[19] | 2,060,895 | 4.3% |

\*      Less than one percent

58.     Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy indicates that each outstanding Company equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement.

59.     The cash consideration payable to certain Company insiders, including amounts stemming from illiquid blocks of Company stock and the cashing out of equity awards, is displayed below as follows:

| Named Executive Officer[1] | Cash ($)[2] | Equity ($)[3] | Pensions/ NQDC ($)[4] | Perquisites/ Benefits ($)[5] | Tax Reimbursement ($)[6] | Total ($) |
|---|---|---|---|---|---|---|
| Young-Joon Kim | 2,229,584 | 14,319,831 | 364,930 | 221,908 | 115,620 | 17,251,873 |
| Young Soo Woo | 381,632 | 1,037,881 | 17,362 | — | — | 1,436,875 |

COMPLAINT

| | | | | | |
|---|---|---|---|---|---|
| Jonathan Kim | — | — | — | — | — | — |
| Theodore Kim | 1,024,400 | 5,092,257 | 204,311 | 147,708 | 51,878 | 6,520,554 |
| Woung Moo Lee | 651,957 | 4,199,412 | 192,121 | — | — | 5,043,489 |
| Chan Ho Park | 462,350 | 821,889 | 16,439 | — | — | 1,300,678 |
| Tae Jong Lee | — | — | — | — | — | — |

60.     Moreover, certain employment agreements with certain MagnaChip executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by MagnaChip's common stockholders such as Plaintiff.  Notably the Preliminary Proxy fails to provide sufficient information regarding the amount of these payments, and if they were included in the totaling of consideration to be received by certain named executives provided above.

61.     The Preliminary Proxy also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders such as Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

62.     Thus, while the Proposed Transaction is not in the best interests of MagnaChip or its stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy***

63.     On April 19, 2021, the MagnaChip Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation the Exchange Act and their fiduciary duties, failed to provide Plaintiff in his capacity as a company stockholder with material information

COMPLAINT

and/or provides materially misleading information critical to the total mix of information available to the Company's stockholders such as Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

64.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

    a.   The specific reasoning as to why the Board did not create the Ad Hoc Transaction Committee until so late in the sales process;

    b.   The specific powers of the Ad Hoc Transaction Committee;

    c.   More specific information regarding the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Wise Road, whether these agreements differ from each other, and if so in what way, including failing to disclosure of the similarities and/or dissimilarities of any specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Wise Road, would fall away; and

    d.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning MagnaChip's Financial Projections*

65.     The Preliminary Proxy fails to provide material information concerning financial projections provided by MagnaChip management and relied upon by J.P. Morgan in its analyses.  The Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.

66.     The Preliminary Proxy indicates that in connection with the rendering of their fairness opinions, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business".

67.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that MagnaChip management provided to the Board and J.P. Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

68.     With respect to the "Company Forecasts" projections, the Preliminary Proxy fails to provide material information concerning the financial projections prepared by MagnaChip management.  Specifically, the Preliminary Proxy fails to disclose all material line items for the metrics of:

a. Revenue, including the underlying metrics of: the specific amount of transitional foundry services at an agreed upon cost plus mark-up to the buyer for foundry products manufactured in the Company's fabrication facility located in Gumi ("Transitional Fab 3 Foundry Services"), that was included in the calculation of revenue and gross profit;

b. Gross Profit, including the underlying metrics of: the specific amount of transitional foundry services at an agreed upon cost plus mark-up to the buyer for foundry products manufactured in the Company's fabrication facility located in Gumi ("Transitional Fab 3 Foundry Services"), that was included in the calculation of revenue and gross profit;

c. Adjusted EBITDA, including the underlying metrics of: income from continuing operations before interest expense, net, income tax expense (benefit) and depreciation and amortization, as well as the specific exclusionary adjustments amount relating to (i) equity-based compensation expense, (ii) foreign currency loss (gain), net, and (iii) derivative valuation loss (gain), net; and

d. Unlevered Free Cash Flow, including the underlying metrics of: earnings before interest and taxes (EBIT) adjusted to exclude stock-based compensation expense, adding depreciation and amortization, taxes, capital expenditures, increases in net working capital, stock-based compensation expense and other one-time charges.

69.     The Preliminary Proxy also fails to provide the specific inputs and assumptions used by J.P. Morgan to extrapolate the provided Company Forecasts out to the years of 2024 – 2030.

70.     The Preliminary Proxy also provides non-GAAP financial metrics, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

71.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process

72.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff is are unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P.*
*Morgan*

73.     In the Preliminary Proxy, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

74.     With respect to the *Public Trading Multiples* Analysis, the Preliminary Proxy fails to disclose the specific inputs and assumptions used to determine the utilized CY2021E FV/EBITDA reference range of 6.0x to 13.0x.

75.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose:

a.  The range of terminal asset values for the Company calculated;

COMPLAINT

b.  The specific inputs and assumptions used to calculate the utilized perpetual growth rate range of 2.0% to 3.0%;

c.  The specific inputs and assumptions used to calculate the utilized discount rate range of 9.50% to 11.50%;

d.  The weighted average cost of capital of the Company;

e.  The specific macroeconomic assumptions and estimates of risk, utilized;

f.  The opportunity cost of capital for the Company;

g.  The specific "other factors" J.P. Morgan deemed appropriate;

h.  The Company's debt;

i.  The Company's cash; and

j.  The fully diluted number of shares of Company common stock outstanding.

76.     With respect to the *Selected Transaction Multiples Analysis*, the Preliminary Proxy fails to disclose:

a.  The date on which each selected precedent transaction closed;

b.  The value of each selected precedent transaction; and

c.  The specific inputs and assumptions used to determine the utilized FV/NTM EBITDA reference range of 9.5 to 14.0x.

77.     With respect to the *Analyst Price Targets for the Company*, the Preliminary Proxy fails to disclose:

a.  The specific price targets utilized; and

b.  The identity of the analysts and/or firms that made such price targets.

78.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

COMPLAINT

79.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a public MagnaChip stockholder.   Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MagnaChip stockholder.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

82.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive of the true value of his investment in MagnaChip.

83.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff in his capacity as a stockholder of MagnaChip by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of MagnaChip to its public stockholders, including Plaintiff.

84.     Indeed, Defendants have accepted an offer to sell MagnaChip at a price that fails to reflect the true value of the Company, thus depriving Plaintiff of the reasonable, fair and adequate value of his shares.

85.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

86.     The Individual Defendants dominate and control the business and corporate affairs of MagnaChip, and are in possession of private corporate information concerning MagnaChip's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of MagnaChip such as Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

87.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

88.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will not receive his fair portion of the value of MagnaChip's assets and has been and will be prevented from obtaining a fair price for his common stock.

89.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of Plaintiff.

90.     Plaintiff and has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

COMPLAINT

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**Against Defendant MagnaChip**

91.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

92.     Defendants MagnaChip knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

93.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

94.     Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

95.     Plaintiff repeats all previous allegations as if set forth in full herein.

96.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

97.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

98.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any Preliminary Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

99.     The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

100.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

101.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

COMPLAINT

102.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

103.     Plaintiff repeats all previous allegations as if set forth in full herein.

104.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Plaintiff in his capacity as a Company stockholder.

105.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

COMPLAINT

106.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of MagnaChip's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

107.    The Individual Defendants acted as controlling persons of MagnaChip within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause MagnaChip to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled MagnaChip and all of its employees.  As alleged above, MagnaChip is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

COMPLAINT

D.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for MagnaChip and obtain a transaction which is in the best interests of MagnaChip and its stockholders, including Plaintiff;

E.     Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 22, 2021                                 **BRODSKY SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

COMPLAINT